UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


OIL CONSULTING ENTERPRISE, INC.,

       Plaintiff,

v.                                                                    Case No. 8:16-cv-3453-T-24-AEP

HAWKER BEECHCRAFT GLOBAL
CUSTOMER SUPPORT, LLC
d/b/a Hawker Beechcraft Services,
n/k/a Textron Aviation, Inc.,

       Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment.

(Doc. No. 46).  Plaintiff opposes the motion.  (Doc. No. 54).  The Court held a hearing on this

motion on February 7, 2018.  As explained below, the motion is denied.

## I.  Background

In December of 2014, Plaintiff Oil Consulting Enterprise, Inc. contracted with Defendant

Hawker Beechcraft Global Customer Support, LLC to perform a Phase I–IV pre-purchase

inspection on King Air 350 aircraft at Defendant's Tampa facility ("First Inspection").  (Doc.

No. 46-2).  The proposal for the services to be provided during the First Inspection show that

Defendant agreed to perform certain inspections, to perform airframe maintenance, and to paint

the aircraft.  (Doc. No. 46-2).  The estimated cost of the inspections was $16,020[1], with the total

estimated cost for all services being $103,048.  (Doc. No. 46-2).  Plaintiff ultimately paid

---

[1]It appears that two proposals were provided, one with inspections costing $12,530 (Doc. No. 46-2, p. 23) and one with inspections costing $3,490 (Doc. No. 46-2, p. 25).

Defendant $178,837.47 for the First Inspection and related repairs.[2]  (Doc. No. 46-3).  During the

First Inspection, no major corrosion damage was discovered.

Thereafter, in May of 2015, Plaintiff sold the aircraft to non-party Cedarcroft

Commercial Corp. ("Cedarcroft").  (Doc. No. 46-1).  At the end of 2015, Cedarcroft entered into

an agreement to sell the aircraft to non-party RACI Management, LLC.  (Doc. No. 46-6).  The

purchase agreement was contingent on a pre-purchase inspection.  (Doc. No. 46-6).

On January 7, 2016, the aircraft was taken to the Cessna Service Center ("Cessna") in

San Antonio, Texas for a pre-purchase inspection ("Second Inspection").  During the Second

Inspection, significant corrosion was detected, and a Cessna report dated May 18, 2016 noted

that some of the corrosion was accompanied by blue residue, which the report identified as being

Blue Lagoon toilet fluid.  (Doc. No. 46-8).

Plaintiff contends that the extensive corrosion that was discovered during the Second

Inspection must have existed during the First Inspection.  As a result, on November 23, 2016,

Plaintiff filed suit against Defendant in state court, and Defendant later removed the case to this

Court.

In its amended complaint, Plaintiff alleges that Defendant breached their contract to

conduct the First Inspection and that Defendant negligently performed the First Inspection by

failing to discover the extensive corrosion on the aircraft.  (Doc. No. 18).  In its amended

complaint and in its answers to interrogatories, Plaintiff identified its damages as consisting of

over $953,000 as follows: (1) the repair bill for the corrosion discovered during the Second

---

[2]One of the charges was for a "C/W 200 HOUR CONTINUOUS CORROSION CONTROL INSPECTION," which cost Plaintiff only $198.  (Doc. No. 46-3, p. 4–5).

Inspection; (2) the loss of use of the aircraft during the seven months that the aircraft was undergoing the Second Inspection and related repairs; (3) the interest paid by Cedarcroft on its loan to pay for the aircraft; and (4) the amount that Cedarcroft had to reduce the sales price for RACI Management, LLC's purchase of the aircraft due to the discovery of the corrosion.

## II.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, arguing that Plaintiff's breach of contract claim fails because: (1) the damages it identifies were not suffered by Plaintiff, and (2) Plaintiff's expert testimony does not show that the corrosion found at the Second Inspection existed during the First Inspection.  At the hearing on the motion for summary judgment, the Court also addressed the parties' motions attacking each other's expert opinions.  The Court's ruling on those motions will be issued in a separate order at a later date, but the Court rejects Defendant's arguments that Plaintiff has no evidence that any of the corrosion found at the Second Inspection existed during the First Inspection.

Turning to Defendant's damages argument, it appears that Plaintiff concedes that the damages that it was previously seeking are not available, because those damages were not suffered by Plaintiff.  Instead, Plaintiff now argues that it was damaged to the extent that it paid for a Phase I–IV inspection in Tampa, but it did not receive all that it paid for to the extent that Defendant did not discover the extensive corrosion that was discovered during the Second Inspection.

The Court agrees with Plaintiff that if it can prove that some of the corrosion found at the Second Inspection existed during the First Inspection, that would be sufficient proof that Plaintiff was damaged by paying for an inspection and not receiving the full value of an inspection done

completely and correctly. At the hearing, Plaintiff conceded that its damages cannot exceed the $178,837.47 it paid Defendant for the First Inspection and related repairs.

However, at trial, Plaintiff will have to prove the amount of its damages to a reasonable certainty. Mobilpref, SpA. v. Coastal Construction of South Florida, Inc., 2017 WL 783514, at *23 (S.D. Fla. 2017)(citations omitted). The measure of Plaintiff's damages is the difference in value between: (a) the value of a Phase I–IV inspection and repairs done correctly and completely, and (b) the value of the Phase I–IV inspection and repairs that Plaintiff received. This means that Plaintiff will have to provide evidence of the ***amount of the diminished value*** of the Phase I–IV inspection and repairs that it received.

Plaintiff's experts have not proffered any opinions regarding the diminished value of the First Inspection as completed by Defendant, and as such, it appears that Plaintiff will be leaving the valuation determination to the jury. Since the amount of damages must be proven to a reasonable certainty, it appears that the jury will have to rely on the invoice for the First Inspection and simply total the amounts for worked charged that Plaintiff proves was not done correctly or completely. While the Court is not capping damages below the $178,837.47 invoiced amount (which Defendant has invited the Court to do), it appears to this Court that without expert valuation testimony, it will be hard for the jury to award more than the cost of the entire Phase I–IV inspection and corrosion-related repairs, which did not greatly exceed $16,020.[3]

---

[3]It is unlikely that the jury will award that entire cost of the Phase I–IV inspection plus the cost of corrosion-related repairs, given that Plaintiff is not challenging the entire Phase I–IV inspection.

### III.  Conclusion

Accordingly, it is ORDERED AN ADJUDGED that:

(1)    Defendant's Motion for Summary Judgment (Doc. No. 46) is **DENIED**.

(2)    The parties must file all pretrial motions, including all motions in limine, by *February 16, 2018*.  Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages. Responses thereto must be filed by *March 2, 2018*.

(3)    The parties' joint pretrial statement must be filed by *March 1, 2018*.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of February, 2018.

Susan C. Bucklew

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record