UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OIL CONSULTING ENTERPRISE, INC.,

    Plaintiff,

v.    Case No. 8:16-cv-3453-T-24-AEP

HAWKER BEECHCRAFT GLOBAL
CUSTOMER SUPPORT, LLC
d/b/a Hawker Beechcraft Services,
n/k/a Textron Aviation, Inc.,

    Defendant.
_____/

## **ORDER**

This cause comes before the Court on two motions: (1) Defendant's Motion to Exclude the Opinions of Plaintiff's Expert, William Boege, III (Doc. No. 43), which Plaintiff opposes (Doc. No. 56); and (2) Plaintiff's Motion to Strike Defendant's Expert, Douglas Stimpson (Doc. No. 44), which Defendant opposes (Doc. No. 53). The Court held a hearing on these motions on February 7, 2018. As explained below, the motions are granted in part and denied in part.

## **I. Background**

In December of 2014, Plaintiff Oil Consulting Enterprise, Inc. contracted with Defendant Hawker Beechcraft Global Customer Support, LLC to perform a Phase I–IV pre-purchase inspection on a King Air 350 aircraft at Defendant's Tampa facility ("First Inspection"). (Doc. No. 46-2). During the First Inspection, no major corrosion damage was discovered.

On January 7, 2016, the aircraft was taken to the Cessna Service Center in San Antonio, Texas for a pre-purchase inspection ("Second Inspection"). During the Second Inspection, significant corrosion was discovered.

Plaintiff contends that the extensive corrosion that was discovered during the Second Inspection must have existed during the First Inspection. As a result, on November 23, 2016, Plaintiff filed suit against Defendant in state court, and Defendant later removed the case to this Court. In its amended complaint, Plaintiff alleges that Defendant breached their contract to conduct the First Inspection and that Defendant negligently performed the First Inspection by failing to discover the extensive corrosion on the aircraft. (Doc. No. 18).

Pending before the Court are two <u>Daubert</u> motions. The Court will address each motion in turn.

## II. Daubert Analysis

Federal Rule of Evidence 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. Rule 702 requires the district court to perform a gatekeeping function for expert testimony. See <u>U.S. v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004). As explained by the <u>Frazier</u> court:

> This [gatekeeping] function "inherently require[s] the trial court to conduct an exacting analysis" of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702. The importance of <u>Daubert</u>'s gatekeeping requirement cannot be overstated. As the Supreme Court framed it in <u>Kumho Tire</u>: "[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

> characterizes the practice of an expert in the relevant field." The
> district court's role is especially significant since the expert's opinion
> "can be both powerful and quite misleading because of the difficulty
> in evaluating it."

Id. (citations omitted). With this in mind, the Court addresses the parties' motions.

### III. Plaintiff's Expert, William Boege, III

Defendant moves to exclude the opinions of Plaintiff's expert, William Boege, to the extent that he opines about corrosion rates or when any corrosion first presented itself on the aircraft. Boege has an A&P (airframe and power plant) certification, as well as an FAA inspection authorization. (Doc. No. 59, depo. p. 8, 11). Boege is not an expert is metallurgy or corrosion. (Doc. No. 59, depo. p. 23). However, within the A&P curriculum, he spent about a month learning about corrosion control. (Doc. No. 59, depo. p. 44). He has no particular education regarding the rate of corrosion, and his knowledge on that subject comes from his experience as a mechanic inspecting aircrafts. (Doc. No. 59, depo. p. 44). Boege's opinions are based on his experience as a mechanic and inspector. (Doc . No. 59, depo. p. 46–47).

Boege proffers three opinions in his expert report: (1) Defendant failed to properly inspect the aircraft during the First Inspection; (2) Defendant failed to follow the inspection protocols set forth by the aircraft's manufacturer; and (3) the corrosion that was discovered during the Second Inspection was pervasive and would have been discovered if the Maintenance Manual and manufacturer's protocols had been followed by Defendant during the First Inspection. (Doc. No. 43-1). During his deposition, Boege went through the invoice of work performed during the Second Inspection and attempted to explain why he believed some of the issues present at the Second Inspection would have been present during the First Inspection. (Doc. No. 59, depo. p. 93–126).

Defendant's motion targets a portion of Boege's third opinion—that the corrosion that was discovered during the Second Inspection was so pervasive that it must have existed during the First Inspection. Defendant challenges Boege's qualifications to offer an expert opinion as to the rate of corrosion and when the corrosion began. Defendant also argues that Boege's opinion is not the product of reliable principles and methods.

When considering the qualifications and methodology of an expert, the court must be mindful of the following:

> [E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, *experience,* training, or education." The Committee Note to the 2000 Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony."
>
> Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express. [Instead,] "while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability. . . . [O]ne may be considered an expert but still offer unreliable testimony." Quite simply, under Rule 702, the *reliability* criterion remains a discrete, independent, and important requirement for admissibility.
>
> Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed

4

> by the qualification prong.
>
> Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known." As the Supreme Court put it, "the Rules of Evidence—especially Rule 702—. . . assign to the trial judge the task of ensuring that an expert's testimony . . . rests on a reliable foundation."
>
> \*   \*   \*
>
> Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial.

Id. at 1260–62 (internal citations omitted).

The Court agrees with Defendant that Boege is not qualified to give an opinion as to the rate of corrosion and when the corrosion began. Boege's expertise with respect to corrosion is that he is qualified by experience to identify existing corrosion and to correct corrosion by neutralizing it. Such experience does not make him an expert in rates of corrosion and/or determining when corrosion began.

Likewise, the Court agrees with Defendant that Boege did not use a reliable method in reaching his conclusion that the corrosion that was found during the Second Inspection must have existed during the First Inspection simply because the corrosion found during the Second Inspection was pervasive. Boege cites to no materials or authorities on the subject of corrosion to support his opinion that pervasive corrosion cannot occur within a year. Given his lack of qualifications to render the opinion and lack of a reliable foundation for the opinion, the Court agrees that Boege cannot opine that the corrosion that was discovered during the Second Inspection was so pervasive that it must have existed during the First Inspection. To this extent, Defendant's motion to exclude Boege's opinion is granted.

5

## IV.  Defendant's Expert, Douglas Stimpson

Plaintiff moves the Court to strike all of the opinions of Defendant's expert, Douglas Stimpson.  Plaintiff does not challenge Stimpson's qualifications; instead, Plaintiff argues that Stimpson did not use a reliable method in reaching his conclusions and that his opinions will not help the jury.

Stimpson is an Aviation Safety Investigator and Accident Reconstructionist for airplanes and helicopters.  Stimpson asserts five opinions in his expert report.  However, as to the following four opinions, the Court rejects Plaintiff's arguments that Stimpson did not use a reliable method in reaching his conclusions and that his opinions will not help the jury: (1) the aircraft was inspected by both facilities using the same criteria, and the criteria they used was in accordance with the manufacturer's inspection criteria; (2) Defendant inspected the aft toilet area during the First Inspection, relief tube blockage was found and repaired, and then the area was inspected again (consisting of a total inspection of this area by three different technicians overseen by three different inspectors); (3) the Second Inspection found corrosion in the same areas in which the First Inspection did not report any corrosion; and (4) it is not uncommon for corrosion to be found between inspections when the aircraft is operated in a high salt-laden environment.

Stimpson's methodology for arriving at the first three of those conclusions consisted of reviewing and interpreting the documentation of the work performed during the First Inspection and Second Inspection.  Such opinions will be helpful to the jury, who likely will not be able to understand the documentation of the work performed without the aid of expert testimony.

Stimpson's fourth opinion listed above—that it is not uncommon for corrosion to be

6

found between inspections when the aircraft is operated in a high salt-laden environment—is based on his experience and education. This opinion will also be helpful to the jury, as aircraft corrosion is not something commonly understood by lay persons.

However, Stimpson's fifth opinion—that the corrosion discovered during the Second Inspection was not present during the First Inspection—is flawed. The Court agrees with Plaintiff that Stimpson did not use a reliable method in reaching this opinion.

Defendant contends that Stimpson used a reliable method for the fifth opinion, which consists of the following: The FAA allows pilots and others to rely on the accuracy of the inspection records at issue in the First Inspection. The next step is to determine if there is any reason not to rely on the records. Since there is evidence that at least some corrosion inspection and repair occurred during the First Inspection, such provides a basis for relying on the inspection records for the First Inspection. The inspection records from the First Inspection indicate that a corrosion inspection was conducted (due to the inspectors and supervisors checking off the boxes to indicate that the work was performed) and that all corrosion that was found was repaired. Therefore, based on the inspection records from the First Inspection, Stimpson concludes that there was no corrosion that existed that was not repaired.

The Court finds that this is not a reliable methodology for determining whether all of the corrosion that existed during the First Inspection was actually discovered and corrected. As such, the Court strikes this opinion and will not allow Stimpson to testify that because the inspection records from the First Inspection indicate that all of the corrosion that existed was identified and corrected, there was no corrosion that existed during the First Inspection that was discovered during the Second Inspection.

## V. Conclusion

Accordingly, it is ORDERED AN ADJUDGED that:

(1) Defendant's Motion to Exclude the Opinions of Plaintiff's Expert, William Boege, III (Doc. No. 43) is **GRANTED** to the extent that Boege cannot opine that the corrosion that was discovered during the Second Inspection was so pervasive that it must have existed during the First Inspection.

(2) Plaintiff's Motion to Strike Defendant's Expert, Douglas Stimpson (Doc. No. 44) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to the extent that the Court will not allow Stimpson to testify that because the inspection records from the First Inspection indicate that all of the corrosion that existed was identified and corrected, there was no corrosion that existed during the First Inspection that was discovered during the Second Inspection. Otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of February, 2018.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record